**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

ANGEL DEAL SYNDICATE, LLC,
*PLAINTIFF,*

VS.

TECSO CHARGE ZONE LIMITED,
*DEFENDANT.*

CIVIL ACTION NO. 1:26-CV-02071-RP

# PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ROBERT PITMAN:

NOW COMES Plaintiff Angel Deal Syndicate, LLC, ("Holder") and files this First Amended Complaint against Defendant TECSO Charge Zone Limited, ("Charge Zone"), and in support thereof respectfully shows the Court as follows:

## I. NATURE OF THE ACTION

1. This is an action under the Federal Arbitration Act, 9 U.S.C. §§ 1–16, and in particular 9 U.S.C. §§ 3 and 4, to compel Charge Zone to arbitrate the parties' dispute before the American Arbitration Association ("AAA") and to stay all further proceedings in this Court pending the conclusion of that arbitration. Holder asserts its claims on the merits in the pending AAA arbitration and does not request that this Court adjudicate those merits.[1] The merits allegations set forth below are pleaded to establish the existence and scope of an arbitrable dispute and are reserved for determination by the arbitrator.

[1] True and correct copies of Holder's Statement of Claim and Demand for Arbitration dated October 5, 2026, and the AAA filing acknowledgment dated October 5, 2026, are attached as **Exhibits E, and E-1**, respectively.

2. The dispute arises from the Newchip Accelerator Master Membership Agreement (the "Master Agreement"), which includes the Accelerator Charge Zone Warrant attached to it as an exhibit (the "Charge Zone Warrant"). The Master Agreement contains a binding agreement to mediate and then arbitrate "any unresolved controversy or claim arising out of or relating to this contract, or breach thereof," administered by the AAA under its Commercial Arbitration Rules.[2]

3. Holder has invoked that agreement. Holder requested mediation and filed a Statement of Claim and Demand for Arbitration with the AAA. Charge Zone has declined to participate in AAA mediation or arbitration and disputes that it is bound by the arbitration agreement.[3] Holder therefore seeks an order compelling arbitration and a stay of this action.

## II. Jurisdiction

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the action is between a citizen of a state and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Holder seeks declaratory judgment and equitable relief as stated.

5. Plaintiff Angel Deal Syndicate, LLC is a citizen of Delaware, and Charge Zone is an Indian company which conducts business in Travis County, Texas with Newchip, Holder's assignor.

6. This Court has personal jurisdiction over Charge Zone because Charge Zone conducted business in this State and has sufficient minimum contacts with the State, and because Charge Zone agreed, through the Master Agreement, that the venue for dispute resolution would be Travis County, Texas.

[2] *See* **Exhibit A**, Newchip Accelerator Master Membership Agreement, at 10–12; Charge Zone Warrant § 8, at 15.
[3] *See* **Exhibit D**, Letter from Josh Eames-Cepero to Byron L. LeFlore, Jr. (Sept. 4, 2026), at 1.

## III. VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas.

8. Furthermore, Charge Zone consented to jurisdiction and venue in the Austin Division of the Western District of Texas in the Charge Zone Warrant, which specifically identifies Travis County, Texas as the venue for dispute resolution.

## IV. PARTIES

9. Holder, Angel Deal Syndicate, LLC is and has been a limited liability company formed under the laws of the State of Delaware. Holder is the successor and assignee to all rights held by Newchip under the Charge Zone Warrant. Holder purchased the Charge Zone Warrant and acceded to Newchip's rights thereunder in a court-approved auction in April 2024.

10. Upon information and belief, TECSO Charge Zone Limited is and has been a public limited company organized under the laws of India and is registered at the Registrar of Companies (ROC), in Ahmedabad, India and is headquartered in Vadodara, State of Gujarat, Republic of India

11. Charge Zone maintains a presence and does business in the United States through agents, subsidiaries and/or alter egos which can be served as follows:

a. CHARGE+ZONE INC., a Delaware corporation by service on its registered agent CORPORATION SERVICE COMPANY at 251 Little Falls Drive, Wilmington, DE 19808, and/or

b. Charge Zone may also be served with process by serving officers, directors and managers in the United States as follows:

   i. Kartikey Hariyani, President and Director, at 119 Montowese Street, Branford, CT 06405;

ii. Raj Mahale, Strategy and Legal Officer, at 12 East 49th Street New York, NY 10017 or 119 Montowese Street, Branford, CT 06405;

iii. William Leasure, Chief Operating Officer, at 201 Wolf Ranch Pkwy Apt 2220, Georgetown, TX 78628 or 119 Montowese Street, Branford, CT 06405.

## V. BACKGROUND

12. On December 16, 2021, Charge Zone executed and delivered the Master Agreement, including the Charge Zone Warrant, to Newchip. The Master Agreement and the Charge Zone Warrant state they are binding on the parties and their successors and assigns.[4]

13. The Charge Zone Warrant granted Newchip, and its assignee Holder, rights to purchase equity interests in Charge Zone for an initial period of two years. To facilitate the warrant rights, Charge Zone agreed to provide required financial records—quarterly and annual financial statements, capitalization tables, and investment packages (collectively, "Financial Records")—and written notice of proposed or ongoing capital-raising activities that would trigger warrant exercise rights ("Offering Notices"), to Newchip during the initial two-year period following December 16, 2021. In the event Charge Zone failed to perform these obligations during the initial two-year period, the exercise period and ongoing duty to provide Financial Records and Offering Notices would be extended to ten years.

14. Charge Zone raised capital in ways that triggered its obligations under the Charge Zone Warrant during the initial two-year period but failed to provide Newchip with Financial Records and Offering Notices as required. As a result, the term and enforcement period for the Charge Zone Warrant was extended to ten years from the date of inception, through December 16, 2031.

[4] *See* Ex. A, at 10–12, 15.

15. Newchip commenced bankruptcy proceedings on March 17, 2023, in the United States Bankruptcy Court for the Western District of Texas, Austin Division, In re Astra Labs, Inc., No. 23-10164-smr. The Bankruptcy Court determined that the Charge Zone Warrant was a severable asset of the bankruptcy estate and authorized Newchip's Chapter 7 Trustee to convey it free and clear for value to a successful bidder at public auction after notice to all creditors and warrant issuers. Holder purchased Newchip's rights under the Charge Zone Warrant from the Chapter 7 Trustee, Randall Osherow, in a court-approved sale.[5]

16. Upon transfer to Holder, the Charge Zone Warrant remains valid and enforceable, and Holder possesses all rights specified therein, including notice, investment, discount, and information rights.

***A. Operation of the Charge Zone Warrant.***

17. The Charge Zone Warrant grants Holder the right to invest up to specified caps upon specified financing events for an initial term of two years from the inception date (the "Warrant Period"), and requires delivery of Financial Records and Offering Notices during the Warrant Period.

18. Section 1 grants the right to make an initial investment, via exercise of warrants, in an aggregate amount not to exceed $250,000 in connection with Qualified Financings. A "Qualified Financing" includes any investment round yielding at least $100,000 in gross proceeds.

19. Section 2 provides for periodic disclosure and delivery of Financial Records during the Warrant Period, including information furnished to prospective investors in connection with any Qualified Financing, annual and quarterly financial statements, and such other information

[5] *See* **Exhibit B**, Order Granting Trustee's Motion for Authority to Sell Designated Securities Warrants, Free and Clear of All Liens, Claims, and Encumbrances, and Providing Relief Pursuant to 11 U.S.C. § 363(b), (f), and (m), *In re Astralabs, Inc.*, No. 23-10164-smr (Bankr. W.D. Tex. Apr. 19, 2024), ECF No. 412, at ¶¶ 3–4, 10.

relating to Charge Zone's financial condition, business, or corporate affairs as Holder may reasonably request.

20. Section 3 grants a follow-on right to invest up to twice the dollar amount of any warrants exercised under Section 1, capped at an additional $500,000, at the issuing price for the next two subsequent Qualified Financings.

21. Section 5 requires Charge Zone to give written Offering Notices to Newchip/Holder prior to each Qualified Financing during the Warrant Period, and further provides that, if Charge Zone fails to perform its obligations under Section 2 (Financial Records) or Section 5 (Offering Notices), the initial two-year Warrant Period is extended to ten years from the inception date.

***B. Charge Zone's Acts and Omissions.***

22. On information and belief, from December 16, 2021, through the present, in each instance in which Charge Zone raised funds, Charge Zone failed to notify Newchip or Holder of the offerings, depriving Newchip and Holder of contractual investment and discount rights, notwithstanding its obligations under Section 5 of the Charge Zone Warrant.

23. On information and belief, Charge Zone failed to provide financial statements, capitalization tables, or offering due diligence materials in any quarter or year since inception, notwithstanding its obligations under Section 2 of the Charge Zone Warrant.

24. On information and belief, between October 2021 and April 2022, Charge Zone closed at least eight equity or as-converted issuances without delivering a single Offering Notice to Newchip pursuant to Section 5 and made no attempt to provide any of the required Financial Records under Section 2.

25. Holder provided notice under Section 13 of the Charge Zone Warrant of its intent to enforce its warrant rights and requested documentary evidence of Charge Zone's compliance with Section 5, but Charge Zone failed to respond.

## VI. THE ARBITRATION AGREEMENT

26. The Master Agreement contains a binding dispute-resolution provision. Section I-25, titled "Dispute; Governing Law; Arbitration," provides in relevant part:

> "If a dispute arises from or relates to this Agreement or the breach thereof, and if the dispute cannot be settled through direct discussions, the parties agree to endeavor first to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration. The parties further agree that any unresolved controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Governing law should be that of the State of Texas, and the venue should be located in Travis County in the State of Texas."[6]

27. The arbitration agreement is a written agreement to arbitrate within the meaning of 9 U.S.C. § 2 and is valid, irrevocable, and enforceable.

28. The arbitration agreement broadly reaches "any unresolved controversy or claim arising out of or relating to this contract, or breach thereof." Holder's claims concerning the Charge Zone Warrant—which is part of and attached to the Master Agreement as an exhibit—arise out of and relate to the Master Agreement and fall squarely within the scope of the arbitration agreement.

29. By expressly providing that disputes "shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules," the parties incorporated the AAA Commercial Arbitration Rules, which empower the arbitrator to rule on his or her own jurisdiction, including any objection to the existence, scope, or validity of the arbitration agreement. The parties thereby clearly and unmistakably agreed to delegate

[6] Ex. A, Master Agreement § I-25, at 10.

questions of arbitrability—including the scope of the arbitration agreement and any condition precedent to arbitration—to the arbitrator.

## VII. HOLDER'S RIGHT TO ENFORCE AND CHARGE ZONE'S OBLIGATION TO ARBITRATE

30. Holder is entitled to enforce the arbitration agreement as the successor and assignee of Newchip. Through the court-approved bankruptcy auction in April 2024, Holder acquired Newchip's rights under the Charge Zone Warrant and the Master Agreement, including the right to invoke the arbitration agreement, free and clear of liens, claims, and encumbrances.[7]

31. Charge Zone is bound to arbitrate because the Master Agreement, including the Charge Zone Warrant, was executed on behalf of the "Member" by Kartikey Hariyani, who is an officer and director of Defendant TECSO Charge Zone Limited.

32. Upon information and belief, Defendant TECSO Charge Zone Limited is the same enterprise as, is the successor to, has assumed the obligations of, and/or operates as the alter ego of the "CHARGE+ZONE" entity that executed the Master Agreement, such that TECSO Charge Zone Limited is bound by the Master Agreement and the arbitration agreement contained within it.

33. Charge Zone has further invoked and received the benefits of the Master Agreement and the Charge Zone Warrant and is estopped from denying its obligation to arbitrate disputes arising out of or relating to that Agreement.

## VIII. CONDITION PRECEDENT — MEDIATION

34. All conditions precedent to arbitration have been performed, have occurred, or have been excused. The Master Agreement requires the parties to "endeavor first to settle the dispute by mediation administered by the American Arbitration Association under its Commercial

[7] *See* Ex. B, at 6, 8, 10–11, 23; Ex. A, at 10, 15.

Mediation Procedures before resorting to arbitration."

35. Holder requested mediation and, on September 3, 2026, served a written request for mediation on Charge Zone's counsel and filed a Request for Mediation with the AAA.[8]

36. By letter dated September 4, 2026, Charge Zone refused to consent to or participate in AAA mediation.[9]

37. The mediation condition is therefore satisfied or excused by Charge Zone's refusal. In the alternative, whether the mediation condition has been satisfied is a procedural question for the arbitrator.

38. Holder thereafter filed a Statement of Claim and Demand for Arbitration with the AAA on October 5, 2026, seeking relief on the merits of the parties' dispute.

## IX. Cause of Action to Compel Arbitration Under 9 U.S.C. § 4

39. Holder re-alleges and incorporates by reference the foregoing paragraphs.

40. There is a valid written agreement to arbitrate contained in the Master Agreement.

41. The parties' dispute arises out of and relates to the Master Agreement and the Charge Zone Warrant and falls within the scope of the arbitration agreement; alternatively, the parties delegated questions of scope and arbitrability to the arbitrator.

42. Holder has demanded arbitration, and Charge Zone has failed, neglected, and refused to arbitrate.

43. Under 9 U.S.C. § 4, Holder is entitled to an order directing that arbitration proceed before the AAA in the manner provided in the Master Agreement, in Travis County, Texas, within this district.

[8] *See* **Exhibit C**, Letter from Byron L. LeFlore, Jr. to Joshua Eames-Cepero and R. Alex Conant (Sept. 3, 2026), with enclosed AAA Request for Mediation, at 1–4.
[9] *See* Ex. D, at 1.

44. Under 9 U.S.C. § 3, Holder is entitled to an order staying this action until the arbitration has been completed in accordance with the terms of the arbitration agreement.

## X. CLAIMS RESERVED FOR ARBITRATION

45. The following claims are pleaded to establish the existence and scope of an arbitrable dispute and are reserved for determination by the arbitrator. Holder does not request that this Court adjudicate these claims.

46. **Breach of Contract.** The Charge Zone Warrant is a valid and enforceable contract. Charge Zone breached it by failing to notify Newchip and Holder of financings, denying the opportunity to invest at discounted pricing, and withholding the required continuing covenants for Financial Records and Offering Notices, causing Holder actual damages.

47. **Specific Performance.** The Charge Zone Warrant's terms are definite and certain, Holder lacks an adequate remedy at law because the right to purchase equity at contractually defined discount terms is unique, and Holder is entitled to an order compelling Charge Zone to honor the Warrant's investment, discount, and information rights and to accept Holder's exercise within the extended period.

48. **Fraudulent Concealment.** Charge Zone intentionally failed to provide required Financial Records and Offering Notices and concealed material triggering events under the Charge Zone Warrant, on which Newchip and Holder justifiably relied, causing injury.

49. **Declaratory Relief.** An actual controversy exists regarding the validity, enforceability, scope, and extended term of the Charge Zone Warrant, Charge Zone's continuing obligations, and the effect of the bankruptcy sale, warranting a declaration of the parties' rights.

50. Holder's claims in arbitration seek specific performance and/or damages in excess of $20,000,000, declaratory relief, attorneys' fees, costs, and interest, as set forth in Holder's AAA

Statement of Claim and Demand for Arbitration.

## XI. PRAYER

51. WHEREFORE, PREMISES CONSIDERED, Holder respectfully requests that this Court enter an order under 9 U.S.C. § 4 compelling Charge Zone to arbitrate the parties' dispute before the American Arbitration Association, in accordance with the Master Agreement and the AAA Commercial Arbitration Rules, in Travis County, Texas; enter an order under 9 U.S.C. § 3 staying this action in its entirety pending the completion of arbitration; and grant Holder any such other to which it may be justly entitled in law or equity.

Respectfully submitted,

**PULMAN LEFLORE PULLEN & REED LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Byron L. LeFlore, Jr.*
Byron L. LeFlore, Jr.
Texas Bar No. 12161070
bleflore@pulmanlaw.com

***ATTORNEYS FOR PLAINTIFF***

**CERTIFICATE OF SERVICE**

I certify that, on the 9th day of October, 2026, the foregoing has been served on the parties in interest in this case in the manner indicated below:

***Via CM/ECF and/or Via Email:***
***josh@aminiconant.com;***
***alex@aminiconant.com;***
***service@aminiconant.com***
Joshua Eames-Cepero
R. Alex Conanct
Amini & Conant, LLP
1204 San Antonio St., Second Floor
Austin, Texas 78701

***Attorneys for Defendant***

/s/Byron L. LeFlore, Jr.
Byron L. LeFlore, Jr.